IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| REALTIME DATA LLC d/b/a IXO,<br><br>Plaintiff,<br><br>v.<br><br>KAMINARIO, INC.<br><br>Defendant. | Civil Action No. 19-350-CFC |

## MEMORANDUM ORDER

Pending before me is a Motion to Enforce Settlement Agreement (D.I. 16) filed by Plaintiff Realtime Data LLC (Realtime). In its motion, Realtime asserts that "[b]y July 19, 2019, *all terms* of the agreement were fully reduced to writing and agreed upon by the parties. All that was left was for the parties to simply sign the document." D.I. 16 at 1 (emphasis in original). This statement is false.

In July 2019 the parties were in the midst of negotiating a settlement agreement. They were trading redlined versions of the agreement back and forth, *see, e.g.*, D.I. 21, Exs. G & H, and were ironing out the final details of the agreement. On July 18, counsel for Kaminario sent a draft of the settlement agreement to Realtime's counsel. *See* D.I. 21 Ex. H. At that time, lead counsel for Kaminario emailed lead counsel for Realtime and said:

> Paul,
>
> Let's get your side's reaction today, if possible. I'm getting on an international flight at 2:30 pm PT. Let me know if you can touch base at 11:30 am PT. I'd like to make sure these changes are acceptable to you. If so, I think we're done, and I'd like to get your Exhibit A for our client to review. Our answer is due Monday, and I'd rather not file any more extensions if we can get to the end by then. Perhaps we just file a notice that the parties have settled and will submit dismissal papers within 30 days.
>
> Thanks,
> Rick

D.I. 21, Ex. I. (emphasis added). Exhibit A was a list of current defendants in suits initiated by Realtime. *See* D.I. 21 Ex. F & Ex. J. The list of current defendants was incorporated by reference into multiple material terms of the contract including Section 4.1, titled "Release to Kaminario," and Section 5.1, titled "Covenant Not to Sue." *See* D.I. 21 Ex. H

The next day, July 19, 2019, at 11:06 am PDT lead counsel for Realtime responded:

> Rick,
>
> Attached [i]s Exhibit A. We would like to add one small tweak to the last sentence of Paragraph 2.3 so that it read[s] (changes underline and in bold).:
>
> For further clarity, in this paragraph, "in ... material part" means that Realtime Data has accused the third party product of infringement based in any way on that third

> party's use of the Kaminario Licensed Product to perform deduplication and/or compression."
>
> Can you let me know if this is acceptable?

D.I. 17, Ex. 8.

Lead counsel for Kaminario responded at 11:50 am PDT:

> Paul,
>
> It is Shabbat in Israel, where I am now. I'm meeting with the Kaminario folks next Tuesday. We can get back to you then. Meanwhile, I do want a 3-week extension on our answer due next Monday 7/22. This will be the last one. Ok if Amit reaches out to local and gets this?
>
> Thanks,
> Rick

D.I. 17, Ex. 9.

At 12:48 pm PDT Counsel for Realtime responded:

> Rick,
>
> In order speed this to a conclusion, my client is willing to accept your last draft without my requested edit. Hopefully this means we can get this done by early next week.
>
> Thanks,

D.I. 17, Ex. 9.

Also on July 19, 2019, this Court held a hearing in *Realtime Data LLC v. Fortinet, Inc.*, 17-1635-CFC from 9:00 am EDT to 11:08 am EDT (or 6:00 am PDT to 8:08 am PDT). During that hearing, the Court declared five of Realtime's

3

patents to be invalid for claiming ineligible subject matter. *See Realtime Data LLC v. Fortinet*, CV No. 17-1635-CFC, D.I. 59. One of the patents the Court declared invalid, United States Patent No. 9,667,751, is a patent-in-suit in this action, *see* D.I. 1 at ¶¶ 22–37, and the other patents are related to the technology at issue in this case.

Realtime now asserts that somewhere in the exchange of emails reproduced above the parties reached a definitive meeting of the minds on the final terms of a settlement agreement. Realtime's motivation, it seems, is to reclaim a negotiating position it lost when the Court invalidated five of its patents. Realtime primarily hangs its assertion on the statement by counsel for Kaminario that he wanted "to make sure these changes are acceptable to you. If so, I think we're done, and I'd like to get your Exhibit A for our client to review." D.I. 21, Ex. I.

The argument that there was a meeting of the minds based on this statement ignores the fact that counsel for Kaminario wanted a copy of Exhibit A for his client to review. It ignores the fact that Realtime made a counteroffer following this email from counsel for Kaminario. It ignores the fact that counsel for Kaminario stated in response to Realtime's counteroffer that he was "meeting with the Kaminario folks next Tuesday. We can get back to you then[]" and that he "want[ed] a 3-week extension on our answer due next Monday[.]" D.I. 21, Ex. K. And it ignores statements made by Realtime's counsel—in what Realtime now

alleges was its acceptance of this settlement agreement—that "[i]n order speed this to a conclusion, my client is willing to accept your last draft without my requested edit. <u>Hopefully this means we can get this done by early next week</u>." D.I. 21, Ex. L. (emphasis added). There is no indication that either party—much less both parties—assented to a final settlement agreement. Indeed, the proposed agreement between the parties includes a signature page, confirming that the parties intended the agreement to take effect only when a written version of it was signed and dated.

To determine whether a contract exists, the Court looks to "whether a reasonable man would, based upon the objective manifestation of assent and all of the surrounding circumstances, conclude that the parties intended to be bound by contract." *Wilcher v. City of Wilmington*, 139 F.3d 366, 373 (3d Cir. 1998) (internal quotation marks and citation omitted). Because no reasonable person would conclude based on the email exchange reproduced above that the parties intended to be bound by those emails and had reached a final agreement, the parties did not assent to a final settlement agreement and there is no contract for the Court to enforce. *Cf. Leeds v. First Allied Conn. Corp.*, 521 A.2d 1095, 1101 (Del. Ch. 1986) ("Negotiations typically proceed over time with agreements on some points being reached along the way towards a completed negotiation. It is

when all of the terms that the parties themselves regard as important have been negotiated that a contract is formed.")

WHEREFORE, this Tenth day of January 2020, Plaintiff Realtime Data LLC's Motion to Enforce Settlement Agreement (D.I. 16) is **DENIED**.

_____
UNITED STATES DISTRICT JUDGE